UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DESIREE COATES**,           Case Number 5:13 CV 234

    Plaintiff,

                                                                                      Magistrate Judge James R. Knepp, II

    v.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.           MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Desiree Coates seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on September 28, 2007. (Tr. 179, 184). Her claims were denied initially and on reconsideration. (Tr. 105, 109, 120, 123). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 126). At the hearing, Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (Tr. 17-18). On March 25, 2011, the ALJ concluded Plaintiff was not disabled. (Tr. 72). Plaintiff filed a request for review. (Tr. 168). Plaintiff's request was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 1481. On January 31, 2013,

Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Plaintiff's Background, Vocational Experience, and Daily Activities*

Born December 22, 1958, Plaintiff was 48 years old at the time of her alleged disability onset date (June 1, 2007). (Tr. 75, 179). Although the record contains evidence Plaintiff was enrolled in school until eleventh grade, Plaintiff claims to have a ninth grade education. (Tr. 42, 317, 325, 369). Previously, Plaintiff worked as a line cook, machine operator, office cleaner, and parts sorter. (Tr. 212).

Plaintiff averred she is unable to work due to depression, bipolar disorder, anxiety, panic attacks, asthma, migraine headaches, a learning disability caused by a brain tumor which was removed at age 22, difficulty reading and writing, and trouble with her grip. (Tr. 23, 221).

Plaintiff indicated on her function report that she lived in a house with her children and grandson. (Tr. 218, 761). However, at the hearing, she said she was staying at homeless shelters or with friends or family. (Tr. 35). Concerning daily activities, Plaintiff looked for work, cleaned her house, talked with her children, took care of her dogs, maintained personal care, cooked, did laundry and dishes, rearranged furniture in her house, shopped once per month, worked on puzzles, played with her grandson, and talked on the phone. (Tr. 36, 219-22). She claimed she could no longer spend time with her friends, sleep without interruption from migraines, or be around groups of people. (Tr. 219, 222). Plaintiff claimed to have a hard time paying attention if she did not understand something and said she did not follow written or spoken instructions well. (Tr. 223).

Plaintiff testified she experienced debilitating migraines once per day (Tr. 30-31, 48-49), and claimed the frequency of the migraines had increased over time (Tr. 279). Up until just

2

before the hearing, Plaintiff had not sought treatment for migraines outside of the emergency room. (Tr. 31). Plaintiff said she had an extreme sensitivity to the smell of coffee. (Tr. 49). Plaintiff testified she slept for over twelve hours per night and had about three bad days per week when she did not do anything. (Tr. 34-35).

*Relevant Medical Evidence*[1]

Plaintiff attended a therapy session at Portage Path Behavioral Health treatment facility ("Portage") on April 14, 2004. (Tr. 399). She complained of depression, anxiety, and cannabis and alcohol use. (Tr. 399). Plaintiff did not respond to outreach attempts or return for treatment and was discharged. (Tr. 399).

Plaintiff presented at the Barberton Citizens Hospital emergency room on May 9, 2006, complaining of a migraine headache. (Tr. 337). She reported a history of migraine headaches, was provided with a dose of erythromycin and four doses of Percocet, then discharged. (Tr. 338).

On October 22, 2007, Plaintiff returned to Portage where her chief complaint was "[b]e honest with you, I'm trying to get my disability[]" and her current mood and emotional status was "okay". (Tr. 428). She claimed to have low motivation and said she was unable to remember things unless she wrote them down. (Tr. 429). When asked why she had abstained from treatment, she said she did not have time because she was working two jobs and raising her children. (Tr. 431). Plaintiff said she was "a real pill popper[]" but stopped taking medication because of side effects. (Tr. 431). On examination, Plaintiff had sufficient attention and

---

1. Plaintiff's brief addresses only migraine headaches and her abilities with respect to concentration, persistence, and pace. (Doc. 16). Accordingly, only evidence relevant to these issues is summarized herein.

concentration, relatively intact recent and remote memory, and average intelligence. (Tr. 434). She was assigned a global assessment of functioning ("GAF") score of 50.[2] (Tr. 466-67).

On February 1, 2008, Plaintiff presented to the Summa Health emergency room ("Summa") complaining of a headache lasting over twelve hours. (Tr. 571). Plaintiff alleged a history of migraine headaches and complained of nausea, vomiting, and photophobia. (Tr. 569, 571). Plaintiff was not in acute distress and a CT scan of her head was unremarkable. (Tr. 571). Plaintiff improved with medication and was discharged. (Tr. 571).

Plaintiff returned to Summa on September 9, 2008, for migraine treatment. (Tr. 520-21). The treatment provider noted Plaintiff only "gets migraines once in a while". (Tr. 521). Plaintiff said her symptoms were typical of previous migraines (i.e. gradual onset, nausea, and photophobia). (Tr. 521). Following an unremarkable examination and resolve of her symptoms with medication, Plaintiff was discharged. (Tr. 520-21).

On January 6, 2009, Plaintiff returned to Portage for therapy relating to stress from caring for her mother. (Tr. 477). Her mood was fair and depression symptoms were mild to moderate; she was able to think rationally and maintain her daily functioning. (Tr. 477).

Plaintiff continued treatment at Portage in 2009 and 2010. (Tr. 751-63, 798-809, 841-48). She consistently exhibited rational thinking, maintained daily functioning, had appropriate behavior and cognition, and worked on her ability to cope with life stressors. (Tr. 751-59, 761-

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 41-50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *DSM-IV-TR*, at 34.

63, 799, 808, 844). She was assigned GAF scores of $70^3$ on June 23, 2009, and $60^4$ on July 16, 2010. (Tr. 763, 800).

Plaintiff returned to Summa on January 12, 2009, complaining of a headache. (Tr. 506-09). A CT scan of her brain was "negative for any acute findings" and medication improved her symptoms "almost completely". (Tr. 508).

On December 13, 2009, Plaintiff reported headache symptoms, which had worsened over the past two days. (Tr. 765). Plaintiff was not in acute distress and she requested an injection of pain medication, which was given before she was discharged. (Tr. 765).

In August 2010, Plaintiff returned to Summa with complaints of a migraine; she was not in distress and was given medication which "completely resolved" her headache. (Tr. 811).

On October 6, 2010, Robert Waldsmith, MA, LPC, completed a questionnaire to assess Plaintiff's mental ability to do work-related activities. (Tr. 827). He indicated Plaintiff had moderate, marked, and extreme limitations in work-related mental function; her condition would worsen under job-related stress; and she would be absent from work more than three times per month. (Tr. 827-28). Cynthia Seibel Lormor, Ph.D., co-signed the opinion. (Tr. 828).

---

3. A GAF score of 61-70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. *DSM-IV-TR*, at 34.
4. A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *DSM-IV-TR*, at 34.

*State Agency Review*

On September 22, 2006, Carl Tishler, Ph.D., found Plaintiff's mental impairments were not severe and she had mild limitations in the area of maintaining concentration, persistence, or pace. (Tr. 375, 385).

David Demuth, M.D., reviewed the medical evidence on May 13, 2009, and found Plaintiff was moderately limited in concentration, persistence, and pace, due to reduced stress tolerance. (Tr. 722, 732, 739). Dr. Demuth declared Plaintiff could carry out tasks in situations where duties were relatively static, changes could be explained, and tasks did not require independent prioritization or more than daily planning. (Tr. 739).

*Consultative Examinations*

On September 7, 2006, Plaintiff saw Robert F. Dallara, Jr., Ph.D., for a consultative examination. (Tr. 369). He noted Plaintiff's ability to maintain attention and concentration was adequate, her pace was mildly slowed, and she had a GAF score of 55.[5] (Tr. 372-73).

Lisa Schroeder, M.D., examined Plaintiff on January 31, 2008, and noted removal of a brain tumor "may have caused some personality changes causing decreased ability to concentrate, memory problems, and anger management issues." (Tr. 441, 443). Dr. Schroeder opined most of Plaintiff's dysfunction seemed psychiatric, such as problems with patience, focusing, temper problems, and problems getting along with co-workers and other people. (Tr. 441).

On March 19, 2008, Sudhir Dubey, Psy.D., completed a mental health examination and observed Plaintiff had long term memory deficits but her "ability to maintain attention,

---

5. *See DSM-IV-TR*, at 34, *supra* note 4.

concentration, persistence and pace to perform simple repetitive tasks [was] not impaired". (Tr. 451-52). Plaintiff did not demonstrate problems with attention or concentration during the examination, and her thought processes were within normal limits. (Tr. 452). He further noted Plaintiff would be able to maintain attention, concentration, and pac[e] to complete complex tasks". (Tr. 452).

*VE Testimony*

At the hearing held November 10, 2010, the ALJ asked the VE whether a person of Plaintiff's same age, education, and experience, who would need to avoid concentrated fumes, chemicals, airborne particulates, and extreme heat and who could do moderately detailed tasks only in situations where the duties were relatively static and changes could be explained, could do past relevant work. (Tr. 17, 53). The VE responded such a person could perform Plaintiff's past relevant work as a machine operator, production packager, housekeeper or cleaner, and fast food worker. (Tr. 53-54).

*ALJ Decision*

The ALJ determined Plaintiff suffered from severe impairments including asthma, borderline intellectual functioning, and depression. (Tr. 77). Next, the ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels except she must avoid concentrated fumes, odors, dusts, gases, chemicals, poor ventilation, and temperature extremes and was limited to only moderately detailed tasks in situations where her duties were relatively static and any changes could be explained. (Tr. 79). Considering Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ determined Plaintiff could perform past relevant work as a production packager, cleaner/housekeeper, machine operator, and fast food worker. (Tr. 83). Thus, the ALJ determined Plaintiff was not disabled. (Tr. 83).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?
2. Did the claimant have a medically determinable impairment, or a combination

   of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can she perform past relevant work?

5. Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if she satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f); 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the RFC failed to accommodate limitations regarding concentration, persistence, and pace, and migraine headaches. (Docs. 16, 20). Plaintiff's arguments are addressed in turn.

*RFC Assessment*

A claimant's RFC is an assessment of "the most [s]he can still do despite h[er] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.*, at § 416.929. An ALJ must also consider and weigh medical opinions. *Id.*, at § 416.927. When a claimant's

9

statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Concentration, Persistence, and Pace

First, Plaintiff argues the ALJ's RFC, and corresponding step five hypothetical, are not supported by substantial evidence because, despite finding Plaintiff had moderate limitations in concentration, persistence, or pace, at step three, the ALJ did not account for these limitations in formulating the RFC. (Docs. 16, 20). Plaintiff argues her position is supported by *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010) and its progeny.

In *Ealy*, the Sixth Circuit found it was error for an ALJ to omit a restriction to moderate difficulties in concentration, persistence, and pace from the hypothetical question to the VE where the ALJ had elsewhere concluded the claimant had such restrictions. 594 F.3d at 516-17. The court found a hypothetical limiting claimant to simple tasks did not adequately convey the claimant's restrictions. *Id.* The court held: "Because the controlling hypothetical inadequately described [the claimant's] limitations, the expert's conclusion that [the claimant] could [do other work] does not serve as substantial evidence that [the claimant] could perform this work." *Id.* at 517.

Relying on *Ealy*, courts have remanded where an ALJ finds at step three the claimant has moderate difficulties in concentration, persistence, or pace, but fails to adequately account for those difficulties in the RFC determination and at step five. *Williams v. Comm'r of Soc. Sec.*,

10

2013 WL 2319276, at *4-5 (N.D. Ohio 2013) (collecting cases). These courts reason that although an ALJ is not required to find a claimant had moderate difficulties in concentration, persistence, or pace, once he or she does, the limitation must be accounted for. *Id*.

However, *Ealy* has been distinguished where the record does not support moderate limitations in concentration, persistence, or pace. *See, e.g., Grim v. Colvin*, 2013 WL 5316346, at *7-8 (N.D. Ohio 2013); *Jackson v. Comm'r of Soc. Sec.*, 2011 WL 4943966, at *4 (N.D. Ohio 2011); *Harvey v. Colvin*, 2013 WL 1500688 (N.D. Ohio 2013). In these cases, if a plaintiff fails to come forward with evidence in the record to support moderate limitations, the ALJ is under no obligation to incorporate unsupported limitations concerning concentration, persistence, or pace into the RFC, regardless of his or her step three determination. *Id*.; *see also*, *Weagraff v. Comm'r of Soc. Sec.*, 2013 WL 968268 (N.D. Ohio 2013) *report and recommendation adopted sub nom. Weagraff v. Colvin*, 2013 WL 980435. In this vein, the courts rely on the well-known rule that an ALJ is only required to include into the hypothetical and RFC those limitations he or she finds credible. *See, e.g., Grim*, 2013 WL 5316346, at *7; *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, the ALJ determined Plaintiff had moderate difficulties in concentration, persistence, or pace at step three. (Tr. 78). In the RFC, the ALJ limited Plaintiff to "moderately detailed tasks in situations where her duties are relatively static and any changes can be explained." (Tr. 79). Plaintiff argues this RFC does not adequately assign speed- or pace-based restrictions and directs the Court to Dr. Demuth's 2009 opinion that Plaintiff was moderately limited in concentration, persistence, and pace (Tr. 732) and Mr. Waldsmith's 2010 finding that Plaintiff had moderate, marked, and extreme limitations in work-related mental function (Tr.

11

827-28) to support her argument. (Doc. 16, at 6-8). Consequently, Plaintiff provided some evidence to support moderate limitations in concentration, persistence, or pace.

Still, there is substantial evidence in the record which shows Plaintiff was only at most mildly limited in concentration, persistence, or pace. By way of opinion evidence, Dr. Dubey concluded Plaintiff's "ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks is not impaired." (Tr. 452). Dr. Dubey further noted Plaintiff would be able to maintain attention, concentration, and pac[e] to complete complex tasks". (Tr. 452). In 2006 (prior to the alleged onset date), Dr. Dallara opined Plaintiff's ability to maintain attention and concentration was adequate and her pace was only mildly slowed. (Tr. 372-73). Also in 2006, Dr. Tishler considered Plaintiff's mental impairments not to be severe and found she had mild limitations in the area of maintaining concentration, persistence, or pace. (Tr. 375, 385). Dr. Schroeder examined Plaintiff on January 31, 2008, and noted removal of a brain tumor "may have caused some personality changes causing decreased ability to concentrate, memory problems, and anger management issues[]", but noted "[m]ost of [Plaintiff's] issues with employment [were] around her inability to get along with others." (Tr. 441, 443).

Additionally, treatment notes from Portage consistently showed Plaintiff exhibited rational thinking, maintained daily functioning, and had appropriate behavior and cognition. (Tr. 434, 477, 751-59, 761-63, 799, 808, 844). Those treatment notes also suggested Plaintiff's impairments were situational and caused by Plaintiff's ability to handle stress, rather than any speed- or pace-based limitations. *See Steed v. Astrue*, 2012 WL 1097003, at *9 (N.D. Ohio 2012).

What is more, Dr. Demuth (the only doctor who found Plaintiff had moderate limitations

12

in concentration, persistence, or pace), recommended the ALJ adopt an RFC reminiscent of the one which was adopted. (Tr. 739) (Dr. Demuth advised Plaintiff could carry out tasks in situations where duties are relatively static and changes can be explained and tasks do not require independent prioritization or more than daily planning).

*Ealy* is further distinguished from the case at bar because the ALJ did not rely on reports which found Plaintiff had moderate or marked limitations concerning concentration, persistence, or pace. *Ealy*, 594 F.3d at 516. To this end, the ALJ afforded Mr. Waldsmith's opinion little weight because he was not an acceptable medical source and his report was unsupported by treatment notes in the record. (Tr. 82). Regarding Dr. Demuth's May 2009 opinion, the ALJ afforded the opinion some weight but only to the extent it was consistent with Plaintiff's activities of daily living, treatment history, and documented ability to maintain attention, concentration, persistence, and pace. (Tr. 81-83). The ALJ also noted Dr. Demuth did not personally examine Plaintiff. (Tr. 83).

In sum, *Ealy* does not require an ALJ to include concentration, persistence, or pace limitations in the RFC without adequate support in the record. Despite the ALJ's step three findings, the ALJ's RFC determination, and subsequent step five hypothetical, is supported by substantial evidence and is within the "zone of choice" accorded to the fact-finder at the administrative hearing level. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Migraine Headaches

Next, Plaintiff argues the ALJ failed to give proper consideration to Plaintiff's headaches. (Doc. 16, at 8). The ALJ found Plaintiff's migraine headaches were not a severe impairment, writing:

> [W]hile the claimant testified that she experiences migraines once a day, in the medical evidence the claimant reported that she only experiences migraines "once in a while". Moreover, since the alleged onset date, she only sought medical treatment for migraines approximately twice per year. She also reported that a typical migraine includes only mild photophobia and nausea and two CT scans in two years were unremarkable. In contrast to her testimony, there is no evidence in the record of any work-related limitation attributable to her headaches.

(Tr. 77-78) (internal citations omitted). For each of the reasons stated by the ALJ, her finding regarding migraine headaches is supported by substantial evidence.

To expand on the ALJ's finding, the record suggests no physician found Plaintiff had functional limitations due to her headaches. Contrary to Plaintiff's claims of daily headaches, the medical record reflects Plaintiff reported on at least one occasion that she experienced headaches only once in a while.[6] (Tr. 521). Furthermore, treatment notes from Portage indicate Plaintiff continued to maintain her activities of daily living. (Tr. 477, 751-59, 761-63, 799, 808, 844). These activities included cleaning her house, talking with her children, taking care of her dogs, maintaining personal care, cooking, doing laundry and dishes, moving furniture around her house, shopping once per month, working on puzzles, playing with her grandson, and talking on the phone. (Tr. 36, 219-22).

Moreover, Plaintiff only sought treatment for her migraine headaches six times over a more than 30 month period, with each visit resulting in unremarkable findings. (Tr. 31, 337, 506-

---

6. Plaintiff and Defendant dispute the significance of an emergency room treatment note that stated: "She gets migraines once in a while." (Tr. 521). Plaintiff argues, "this was the wording of one of her emergency room physicians in the course of writing a narrative summary of her treatment on one occasion". (Doc. 16, at 8). Defendant claims the statement represents Plaintiff's reports to the treatment provider. (Doc. 17, at 12). The undersigned finds this comment ostensibly derives from Plaintiff's reports to the treatment provider and the meaning is the same whether or not Plaintiff said the comment verbatim.

09, 521, 571, 811). To this end, treatment notes from those visits indicate Plaintiff was not in acute stress and CT scans were negative. (Tr. 508, 571, 765, 811). Further, after being given medication, Plaintiff consistently left the emergency room with completely resolved symptoms. (Tr. 337, 520-21, 571, 765, 811).

Thus, while there may be some evidence in the record to support an alternative conclusion, the ALJ's RFC regarding Plaintiff's migraine headaches is supported by substantial evidence, which includes Plaintiff's activities of daily living, objective treatment evidence, lack of medical opinions, and Plaintiff's treatment history.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's RFC determination and step five hypothetical supported by substantial evidence. Therefore, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

                                                    s/James R. Knepp II  
                                                   United States Magistrate Judge